1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10

11   Jessica Cruz-Dominguez                  No. C 07-1924  JL
     as Guardian ad Litem for
12   Santos Eddie Fitzgerald,                **Motion Granting in part and denying in
                                             Part Defendants' motion for summary
13                 Plaintiff,                judgment (Docket #50)**

14         v.

15   California Department of Corrections
     Rehabilitation, et al.,
16
                   Defendants.
17   _____/

18         **I.      Introduction**

19         Defendants' motion for summary judgment came on for hearing. All parties had

20   previously consented to this Court's jurisdiction under 28 U.S.C. §636(c). Mashhood

21   Rassam, FENWICK & WEST LLP, appeared for the minor Plaintiff Santos Eddie Fitzgerald

22   through his guardian ad litem Jessica Cruz-Dominguez. Deputy Attorney General Thomas

23   Blake appeared for Defendants. The Court carefully considered the moving and opposing

24   papers and the arguments of counsel, and hereby grants the motion in part and denies it in

25   part.

26         **II.     Facts**

27         Defendants and Plaintiff agree on the basic facts of this case. Mr. Fitzgerald was a

28   brittle diabetic who died on September 12, 2006. An autopsy by Dr. Ikechi Ogan

United States District Court

For the Northern District of California

1    determined the cause of death to be "acute diabetic coma with seizure activity," which was

2    caused by a sharp drop in Mr. Fitzgerald's blood sugar. Declaration of Mashhood Rassam

3    ("Rassam Decl."), Ex. 1 (Ogan Depo. Ex. 2011) at 2; Ex. 2 (Ogan Depo.) at 89:5-11. In

4    2006, defendants Bui and Saylor were both employed by San Quentin, the latter as Chief

5    Medical Officer ("CMO"), and the former as "Physician and Surgeon." As these basic facts

6    are not in dispute, the remainder of this "FACTS" section will focus on evidence either

7    omitted or misrepresented in defendants' brief.

8         Mr. Fitzgerald had also suffered a catastrophic drop in blood sugar ("hypoglycemic

9    crisis") on July 28, 2006. Rassam Decl., Ex. 3 (Bui Depo.) at 78:4-79:5. He was taken

10   unconscious to San Quentin's Triage and Treatment Area ("TTA"), which is the equivalent

11   of the prison's urgent care clinic. There, Dr. Bui administered medication and managed to

12   elevate Mr. Fitzgerald's blood sugar. Id. at 79:13-19. Dr. Bui also stitched up Mr.

13   Fitzgerald's forehead, which had been cut open when Mr. Fitzgerald lost consciousness

14   and fell to the ground. Id. at 57:8-58:20. After Dr. Bui treated him, Mr. Fitzgerald was

15   rushed to the hospital. Rassam Decl., Ex. 4 (Clarke Depo.) at 28:8-16. Dr. Bui testified that

16   to his knowledge Mr. Fitzgerald had suffered "many" such hypoglycemic events. Rassam

17   Decl., Ex. 3 (Bui Depo.) at 59:21-25.

18        The doctors at San Quentin testified that as a brittle diabetic who suffered from such

19   severe bouts of low blood sugar, Mr. Fitzgerald should have been provided with a certain

20   standard care to stabilize his blood sugar. Both Dr. Saylor and Dr. Jessica Clarke, a

21   physician who treated  Mr. Fitzgerald after he went to the hospital in July 2006, testified

22   that Mr. Fitzgerald's blood sugar should have been checked every six hours, for a total of

23   four times per day. Rassam Decl., Ex. 5 (Saylor Depo.) at 63:14-64:1; Ex. 4 (Clarke Depo.)

24   at 37:11-38:5. Drs. Saylor and Bui testified that as a brittle diabetic Mr. Fitzgerald should

25   have been treated by an endocrinologist, or a diabetes specialist, who could have worked

26   to better manage Mr. Fitzgerald's disease. Rassam Decl., Ex. 5 (Saylor Depo.) at

27   60:7-61:13; Ex. 3 (Bui Depo.) at 30:1-6. Dr. Saylor also testified that as a "medically

28   complex patient," Mr. Fitzgerald should have been transferred to the California Medical

United States District Court

For the Northern District of California

1   Facility in Vacaville ("CMF"), a California Department of Corrections ("CDCR") institution

2   boasting a hospital and other medical facilities where his diabetes could have been

3   monitored and better treated. Rassam Decl., Ex. 5 (Saylor Depo.) at 64:10-65:3.

4        Both Drs. Saylor and Bui could have recommended that Mr. Fitzgerald receive such

5   standard treatment, or provided the treatment themselves. Indeed, although Dr. Bui

6   frequently worked in the TTA in 2006, his duties were not limited to treating patients in the

7   TTA; rather he was generally tasked with the following: "examines patients and diagnoses

8   their illness and prescribes and administers medical treatment." Rassam Decl., Ex. 6

9   (Kanan Depo. Ex. 2021) at 2. Consequently, he could have followed up with Mr. Fitzgerald

10  once he left the TTA and continued to provide him care. Rassam Decl., Ex. 7 (Kanan

11  Depo.) at 49:18-51:1. This care could have included ensuring that Mr. Fitzgerald's blood

12  sugar be checked four times per day, and referring him to an endocrinologist. *Id.* at

13  51:2-14.

14       Dr. Saylor could also have ensured that Mr. Fitzgerald receive the treatment San

15  Quentin doctors believed to be standard for a patient with brittle diabetes. In fact, Dr.

16  Saylor's duties included both caring for patients and making recommendations about

17  patient care to other doctors. Rassam Decl., Ex. 8 (Kanan Depo. Ex. 2022) at 2; Ex. 7

18  (Kanan Depo.) at 60:23-61:8. Thus, she could have ensured that Mr. Fitzgerald's blood

19  sugar was checked four times per day, and that he was referred to an endocrinologist.

20  Rassam Decl., Ex. 7 (Kanan Depo.) at 85:1-86:10. In addition, Dr. Saylor has admitted that

21  she could have requested that Mr. Fitzgerald be transferred to CMF. Rassam Decl., Ex. 5

22  (Saylor Depo.) at 64:10-65:11.

23       Despite the fact that they could have worked to ensure that Mr. Fitzgerald received

24  the standard care necessary to treat his disease, Drs. Bui and Saylor did nothing. Dr. Bui

25  testified that he made no effort to treat Mr. Fitzgerald after he was discharged from the

26  TTA. Rassam Decl., Ex. 3 (Bui Depo.) at 49:5- 50:25. Dr. Saylor also failed to ensure that

27  Mr. Fitzgerald received adequate treatment, such as having his blood sugar checked four

28  times per day. In fact, Dr. Saylor had in place a procedure where the blood sugar of

United States District Court
For the Northern District of California

1  diabetic patients would only be checked twice per day, and even though it was possible to

2  have Mr. Fitzgerald's blood sugar checked more often she did not deviate from the

3  established procedure. Rassam Decl., Ex. 5 (Saylor Depo.) at 63:19-64:1; Ex. 4 (Clarke

4  Depo.) at 37:11-38:5; Ex. 7 (Kanan Depo.) at 72:6-13.

5  Moreover, Mr. Fitzgerald's medical files do not show that he was referred to an

6  endocrinologist; indeed, San Quentin did not have one on staff. Rassam Decl., Ex. 5

7  (Saylor Depo.) at 40:7-12. Dr. Saylor also did not recommend that Mr. Fitzgerald be

8  transferred to CMF. Id. at 64:14-65:11.

9  Both Dr. Bui and Dr. Saylor have offered reasons as to why they failed to provide

10  Mr. Fitzgerald with standard care for a brittle diabetic. Dr. Bui testified that it was not part of

11  his job duties to care for Mr. Fitzgerald after he left the TTA. Rassam Decl., Ex. 3 (Bui

12  Depo.) at 49:13- 50:10. The evidence set forth above directly contradicts this explanation.

13  Supra at 4:3-10.

14  Dr. Saylor likewise denies responsibility for Mr. Fitzgerald's death, testifying that she

15  did not know Mr. Fitzgerald suffered from diabetes until after his death. Rassam Decl., Ex.

16  5 (Saylor Depo.) at 47:17-20. This assertion is not credible. During the course of discovery

17  Plaintiff obtained evidence from two different witnesses who testified that Dr. Saylor knew

18  before Mr. Fitzgerald died that he suffered from brittle diabetes. First, Dr. Clarke explained

19  that she informed Dr. Saylor of Mr. Fitzgerald's medical condition shortly after he suffered a

20  hypoglycemic crisis in July, because it was customary to inform the CMO after an inmate

21  was hospitalized. Rassam Decl., Ex. 4 (Clarke Depo.) at 41:23-42:13. Rather than

22  categorically deny that any such meeting took place, Dr. Saylor responded that she cannot

23  recall the meeting. Rassam Decl., Ex. 9 (Saylor's Response to Plaintiff's Requests for

24  Admissions) at 2-3.

25  Dr. Williams, Dr. Saylor's deputy, also testified that Dr. Saylor knew of Mr.

26  Fitzgerald's medical condition prior to his death. As a result of the seizure he suffered in

27  July 2006, Mr. Fitzgerald fell and cut his forehead open. Rassam Decl., Ex. 4 (Clarke

28  Depo.) at 28:8-19. After Dr. Bui sutured the cut, Mr. Fitzgerald lodged an official complaint,

1   known in San Quentin parlance as a "602," about the quality of the suturing. Rassam Decl.,

2   Ex. 10 (Inmate Appeal Form). In the complaint, Mr. Fitzgerald clearly stated that he

3   received a cut on his head as a result of a seizure brought on by low blood sugar: "I had a

4   seizure as a result of low blood sugar. During this seizure I banged my head on something

5   within my assigned cell, resulting in a jagged contusion in the forehead above the

6   eyebrow." *Id.* Dr. Williams testified that Dr. Saylor saw that complaint, dispatching him to

7   examine Dr. Bui's suturing job and to determine if Mr. Fitzgerald needed to be seen by a

8   plastic surgeon. Rassam Decl., Ex. 11 (Williams Depo.) at 13:21-15:3. Thus, as Dr. Saylor

9   read Mr. Fitzgerald's complaint, she cannot credibly claim that she did not know of his

10  medical condition until it was too late to help him.

11  **III.   Defendants' Motion**

12          With the unserved defendants dismissed (Aside from Drs. Bui and Saylor, Plaintiff

13  does not oppose summary judgment as to the other served Defendants. (See Plaintiff's

14  Opposition at Section V.G.)), this case boils down to one question: should Drs. Tam Bui

15  and Karen Saylor be held liable for the death of the minor Plaintiff's father, Scott A.

16  Fitzgerald, the 34 year-old San Quentin inmate who suffered from brittle type I diabetes

17  and died on September 12, 2006 when his blood sugar fell to a catastrophically low level?

18          Defendants argue that Drs. Saylor and Bui should not be held liable because they

19  were not Mr. Fitzgerald's "treating doctors." In making this argument, Defendants begin

20  their liability analysis by misapplying the law. The legal standard for whether Drs. Bui and

21  Saylor should be held liable is not whether they were Mr. Fitzgerald's "treating doctors," but

22  whether they violated Mr. Fitzgerald's Eighth Amendment rights through deliberate

23  indifference to Mr. Fitzgerald's medical needs.

24          Defendants also argue that there is no vicarious liability under 42 U.S.C. §1983. This

25  begs the question. Plaintiff is not arguing that Drs. Saylor and Bui bore responsibility for the

26  negligent conduct of other health care personnel, but rather, that they each had their own

27  responsibility to Plaintiff which they failed to meet.

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    The question is whether Defendants knew of Fitzgerald's serious medical condition,

2  and failed to provide him with the necessary care such that he suffered and died. Although

3  Nowhere in Defendants' brief is the standard rigorously applied to the facts of the case.

4  Instead, Defendants' brief contains a short discussion of deliberate indifference, followed by

5  a non sequitur assertion that Drs. Bui and Saylor are not liable because other unnamed

6  doctors should have been caring for Mr. Fitzgerald. Opening Br. at 14.

7    Defendants also fail to mention key facts that demonstrate that genuine issues of

8  material fact exist regarding whether Drs. Bui and Saylor were deliberately indifferent to Mr.

9  Fitzgerald's medical needs. For instance, when arguing that Drs. Bui and Saylor should not

10  be liable for Mr. Fitzgerald's death because they were not his "treating doctors,"

11  Defendants fail to mention that as a part of their duties at San Quentin both doctors could

12  personally treat Mr. Fitzgerald, or recommend that he receive specific treatments from

13  other doctors.

14    Defendants also argue that Dr. Saylor cannot possibly be liable for the death of Mr.

15  Fitzgerald because she testified that she did not know he suffered from brittle diabetes until

16  after he died. Opening Br. at 7. Defendants fail to mention, however, that other doctors

17  contradicted Dr. Saylor's testimony, and testified that she knew of Mr. Fitzgerald's condition

18  before he died. Plaintiff argues that, when Defendants' distortions of law and fact are

19  corrected, there can be little doubt that Drs. Bui and Saylor violated Mr. Fitzgerald's

20  constitutional rights.

21    First, there is no question that Mr. Fitzgerald suffered from a serious medical

22  condition. Second, the evidence shows that Drs. Bui and Saylor knew of Mr. Fitzgerald's

23  medical condition, but failed to provide him with standard care for a brittle diabetic. As a

24  result, Mr. Fitzgerald died. That is the definition of deliberate indifference, meaning that Drs.

25  Bui and Saylor are liable for violating Mr. Fitzgerald's Eight Amendment rights, as well as

26  for his wrongful death. At the very least, however, in light of the correct legal standard and

27  full factual record, there are several genuine issues of material fact as to the liability of Drs.

28

United States District Court

For the Northern District of California

1    Saylor and Bui so that summary judgment is inappropriate.

2

3    **IV.    Legal Standard**

4    **A.    This case cannot be fully resolved on summary judgment**

5          A high bar must be cleared before Defendants can be granted summary judgment.

6    As an initial matter, to prevail on summary judgment Defendants bear the burden of

7    showing that no genuine issue of material fact exists regarding whether Drs. Bui and Saylor

8    are liable for the death of Mr. Fitzgerald. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247

9    (1986). In determining whether Defendants have met this burden, the evidence of the

10   non-movant must be believed. *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir.

11   2007). In addition, all justifiable inferences must be drawn in favor of the non-moving party.

12   *Id.* A "justifiable inference" is not necessarily the most likely inference or the most

13   persuasive inference. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d

14   1539, 1542 (9th Cir. 1989). Rather, an inference in favor of the non-moving party may be

15   drawn "if it is rational or reasonable." *Id.* Summary judgment is inappropriate if reasonable

16   jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the

17   nonmoving party's favor. *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir.

18   1999).

19         Cases such as this one are not amenable for resolution on summary judgment. First,

20   summary judgment should be used sparingly in cases which involve judging the credibility

21   of witnesses, because doing so is the province of the jury. *Espinosa v. City & County of*

22   *San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th

23   Cir. 1994). The Court finds that this case involves judging the credibility of central actors;

24   for example, a finding of fact whether Dr. Saylor knew of Mr. Fitzgerald's diabetic condition

25   prior to his death will boil down to whether a finder of fact believes Dr. Saylor, or Drs.

26   Williams and Clarke. In addition, "questions involving a person's state of mind are generally

27   factual issues inappropriate for resolution by summary judgment." *Conn v. City of Reno*,

28   591 F.3d 1081, 1098 (9th Cir. 2010), petition for cert. filed, (U.S. May 6, 2010) (No.

09-1361) (internal quotations omitted).

1    This case will largely turn on the states of mind of Drs. Bui and Saylor, and whether

2    they understood that not providing Mr. Fitzgerald with the standard treatment for brittle

3    diabetics would put him at risk of harm. Accordingly, this case should not be resolved

4    without a trial.

5    **B.    Prison officials can be held liable for violating an inmate's Eighth**
     **Amendment rights**

6

7    A prison official may be liable for violating an inmate's Eighth Amendment right if the

8    official is deliberately indifferent to the inmate's medical needs, citing *Lolli v. County of*

9    *Orange*, 351 F.3d 410, 418-419 (9th Cir. 2003). Defendants distinguish the Lolli case, as

10   well as the *Conn* case.  *Conn v. City of Reno*, 591 F.3d 1081, at 1098 (9th Cir. 2010).  In

11   this case, the Court held that liability can be established by "setting in motion a series of

12   acts by others which the actor knows or reasonably should know would cause others to

13   inflict the constitutional injury."

14   The Ninth Circuit has stated that a determination of "deliberate indifference" is less

15   stringent in cases involving a prisoner's medical needs than in other cases involving harm

16   to incarcerated individuals because 'the State's responsibility to provide inmates with

17   medical care ordinarily does not conflict with competing administrative concerns.'"

18   *McGuckin v. Smith*, 974 F. 2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds by

19   *WMX Techs. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quoting *Hudson v. McMillian*, 503

20   U.S. 1, 6 (1992)).

21   Whether an official is deliberately indifferent to medical needs does not turn on

22   whether that official is a "treating doctor," as Defendants contend. Rather, to be deliberately

23   indifferent towards an inmate's medical needs a prison official must know of the inmate's

24   serious medical condition, infer from that fact that a risk of harm to the inmate exists, and in

25   response provide unacceptable treatment or no treatment such that harm to the inmate

26   results. *Jackson v. McIntosh*, 90 F. 3d 330, 332 (Fed. Cir. 1996).

27   Thus, a finding of deliberate indifference requires an objective component (serious

28   medical condition), and subjective components (knowing of an inmate's medical condition

     and inferring that a risk of harm exists, but failing to properly respond). *Conn*, 591 F.3d at

**United States District Court**
For the Northern District of California

1095. A medical need is considered serious if "the failure to treat the prisoner's condition

could result in further significant injury or 'the unnecessary and wanton infliction of pain.'"

*McGuckin*, 974 F. at 1059 (citation omitted). Moreover, the failure to respond to an inmate's

serious medical condition can be a cause in fact of any harm that results to the inmate

because the "requisite causal connection can be established not only by some kind of

direct personal participation in the deprivation, but also by setting in motion a series of acts

by others which the actor knows or reasonably should know would cause others to inflict

the constitutional injury." *Conn*, 591 F.3d at 1098 (quoting *Johnson v. Duffy*, 588 F.2d 740,

743-44 (9th Cir. 1978)) (reversing summary judgment in favor of police officers who knew

of the decedent's threats to commit suicide, but did nothing intervene before decedent

hanged herself).

The standard for deliberate indifference encompasses persons in supervisory

capacities who know that an inmate's constitutional rights are being violated as a result of

inadequate care for a serious medical condition, but fail to prevent that violation. *Redman v.

County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (reversing a directed verdict in

favor of defendant supervisor because the supervisor knew of the conditions that led to the

violation of the inmate's constitutional rights, but did not rectify them); *Langford v. Norris*,

614 F.3d 445, 461-464 (8th Cir. 2010) (explaining that defendant medical supervisor, who

was not personally responsible for the plaintiff inmate's treatment, could be held liable

under § 1983 because he knew that the inmate's medical needs were not being adequately

met, but did not act to remedy that situation).

The fact that a prison official knows of an inmate's serious medical condition and

infers from that fact that a risk of harm to the inmate exists need not be proven through

direct evidence. Such facts "may be shown by circumstantial evidence." *Lolli*, 351 F.3d at

421. For instance, a finder of fact may infer that a prison official knew of a substantial risk

of harm if the risk was obvious. *Conn*, 591 F.3d at 1097 (finding that the risk of suicide was

obvious where the decedent had threatened to commit suicide and choked herself with a

seatbelt). Moreover, "a finding that the inmate was seriously harmed by defendant's actions

United States District Court
For the Northern District of California

1   or inaction tends to provide additional support to a claim that defendant was 'deliberately

2   indifferent" to [a] prisoner's medical needs." *McGuckin*, 974 F. at 1060.

3        Applying this standard to diabetes cases, the Ninth Circuit has recognized that

4   failure to provide inmates suffering from type I diabetes with proper medical care

5   constitutes deliberate indifference, as discussed above, in *Lolli*. Defendant police officers

6   refused to provide the plaintiff who was in their custody with food or insulin despite the fact

7   plaintiff told  them he was a diabetic who was suffering from low blood sugar. *Lolli*, 351

8   F.3d at 421. The Ninth Circuit reversed the lower court's grant of summary judgment in

9   favor of defendants, holding that evidence of plaintiff's protestation about his diabetes and

10  his requests for food and insulin, coupled with the defendants' failure to provide them,

11  meant that there was a genuine issue of material fact as to whether defendants were

12  deliberately indifferent. *Id.* at 420-21. In reversing a summary judgment, the Court largely

13  relied on circumstantial evidence of deliberate indifference. The Court noted that "the

14  officers' indifference to Lolli's extreme behavior, his obviously sickly appearance and his

15  explicit statements that he needed food because he was a diabetic could easily lead a jury

16  to find that the officers consciously disregarded a serious risk to Lolli's health." *Id.* at 421.

17        **C.    Drs. Saylor and Bui are not entitled to qualified immunity.**

18        Although Defendants believe that the Court need not reach the issue, they argue

19  that Drs. Saylor and Bui are entitled to qualified immunity because there was no clearly

20  established law that would have put them on notice that their actions – relying on other

21  licensed physicians to discharge the primary care physician's duty to manage Mr.

22  Fitzgerald's chronic diabetes—would be unlawful.  *Saucier v. Katz*, 533 U.S. 194, 201

23  (2001) ("Qualified immunity is an entitlement not to stand trial or face the other burdens of

24  litigation."). The Court has discretion to consider either question in the *Saucier* two-step

25  inquiry first. *Pearson v. Callahan*, 129 S.Ct. 808, 818-19 (2009). A court must decide (1)

26  whether the facts alleged or shown by the plaintiff make out a violation of a constitutional

27  right, and (2) if so, whether that right was "clearly established" at the time of the defendant's

28  alleged misconduct, id., at 201, 121 S.Ct. 2151. Qualified immunity applies unless the

    official's conduct violated such a right. *Pearson v. Callahan,*  129 S.Ct. 808, 811 (2009)

United States District Court

For the Northern District of California

1   (internal citations omitted. This Court finds that under the facts alleged by Plaintiff, if Drs.

2   Saylor and Bui were both aware of Fitzgerald's brittle diabetic condition and did nothing to

3   provide appropriate treatment, that they could be found to have been deliberately indifferent

4   to his medical needs under the Eighth Amendment, as discussed above. The standard for

5   deliberate indifference encompasses persons in supervisory capacities who know that an

6   inmate's constitutional rights are being violated as a result of inadequate care for a serious

7   medical condition, but fail to prevent that violation. *Redman v. County of San Diego*, 942

8   F.2d 1435, 1447 (9th Cir. 1991) (reversing a directed verdict in favor of defendant

9   supervisor because the supervisor knew of the conditions that led to the violation of the

10  inmate's constitutional rights, but did not rectify them); *Langford v. Norris*, 614 F.3d 445,

11  461-464 (8th Cir. 2010) (explaining that defendant medical supervisor, who was not

12  personally responsible for the plaintiff inmate's treatment, could be held liable under § 1983

13  because he knew that the inmate's medical needs were not being adequately met, but did

14  not act to remedy that situation). Accordingly, Drs. Bui and Saylor are not entitled to

15  qualified immunity.

16        **D.    Conclusion**

17        The Court finds that Plaintiff Santos Eddie Fitzgerald has standing. The Eleventh

18  Amendment bars the suit against the State of California and the state agencies so the

19  complaint is dismissed as to them. Plaintiff is not alleging liability under 42 U.S.C. §1983 on

20  a theory of respondeat superior, which would not be valid. However, he is alleging direct

21  responsibility of the supervising physicians to see to it that Plaintiff's medical needs were

22  met, if they were aware of them, in order to escape liability under the Eighth Amendment.

23  There are disputed issues of fact as to these physicians' knowledge of and actions

24  regarding Plaintiff's medical needs. In particular Dr. Bui actually treated Plaintiff when he

25  fell and cut his head, so there is a question of fact whether he was a treating physician,

26  even if he didn't treat Plaintiff for the fatal hypoglycemic episode. Regarding both Dr. Saylor

27  and Dr. Bui, there are questions of fact as to their knowledge of Plaintiff's condition and

28  their involvement in his care. Finally, neither Dr. Bui nor Dr. Saylor are entitled to qualified

1    immunity. Consequently, summary judgment is denied as to claims against the individual

2    Defendants.

3        IT IS SO ORDERED.

4    DATED: March 21,  2011

5

6                                                    _____
                                                     James Larson
                                                     United States Magistrate Judge
7

8

9
     G:\JLALL\CASES\CIVIL\07-1924\ORDER GIP 50.wpd
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California